IN THE UNITED STATES DISTRICT
COURT EASTERN DISTRICT OF
MISSOURI EASTERN DIVISION

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| Plaintiff, | ) | |
| v. | ) | Case No. 4:20-cr-00418 JAR/NAB |
| WAIEL REBHI YAGHNAM, | ) | |
| Defendant. | ) | |

## SENTENCING MEMORANDUM

COMES NOW Defendant, Waiel Rebhi Yaghnam, by and through undersigned counsel, and respectfully submits his Sentencing Memorandum for consideration.

The amount of loss caused by a criminal offense is the primary driver of sentencing for economic crimes. Under the guidelines and their commentary, a defendant can be sentenced based upon "intended" loss rather than "actual" loss. This distinction often results in extraordinarily unfair results because a person can be sentenced on a very large "intended" loss when the victims lost little or no money. That is the case in the present matter. As is indicated in the Presentence Report, Paragraph 98 addresses the question of restitution and asserts that there is no identifiable victim amount of restitution. It is undisputed that there is no "actual" loss in this matter and the Presentence Report writer and the Government have relied upon the concept of "intended" loss.

The commentary to the Sentencing Guidelines at Section 2B1.1 cmt. N. 3(i)-(ii), requires that a court compare the financial harm the defendant "actually" inflicted on his victims with losses that were "intended" to result and to apply the greater amount. "Intended loss" is defined as "the pecuniary harm that the defendant purposely sought to

1

inflict". Thus, when a defendant is involved in a scheme that failed to succeed or only partially succeed, they can be sentenced based upon a fictitious amount.

This commentary to the Guidelines provides that the defendant's subjective intent is the appropriate standard when analyzing intended loss and that "reasonable inferences about the defendant's mental state [may be made] from the available facts." Under the subjective standard, the United States Attorney's Office can argue that as long as a person intended to inflict a loss, the person should receive the same enhancement as a defendant who actually caused a loss. This results in grave inequities.

In recognizing the disparities in sentencing people for "intended" losses, where there was little or no "actual" loss, the courts have recently questioned the fairness and legality of the commentary and require a greater standard of proof as to the amount of "intended" loss. In *United States v. Kirschner*, 995 Fed.3d 322 (3d Cir. 2021), the Third Circuit Court of Appeals questioned the government's argument that the "intended" loss equaled the maximum potential loss that the defendant could have committed and held that the courts must conduct a "deeper analysis" before inferring that a defendant intended to cause a particular loss. The *Kirschner* court held that the government must prove by preponderance of the evidence the defendant's intent and the court must make a "reasonable estimate" of the intended loss. Thus, "intended" loss no longer equates with maximum potential loss and an individualized inquiry must be made to determine the amount of loss that the defendant purposely intended to cause.

In addition, in *United States v. Nasir*, 17 Fed.4th 459 (3d Cir. 2021), the Third Circuit, citing the U.S. Supreme Court decision in *Kisor v. Wilkie*, 139 S.Ct. 2400 (2019), held that "rather than defer to the commentary, we should use lenity to interpret

ambiguous guidelines." Thus, defendants can now argue the Rule of Lenity in order to defeat the inequitable direction in the commentary requiring "intended" loss to control at sentencing. As the Third Circuit stated in *Nasir*, "the presumption of liberty remains crucial to guarding against over punishment. When a guideline is ambiguous, the Rule of Lenity calls for adopting the more lenient of two plausible readings… There is no compelling reason to defer to a guidelines comment that is harsher than the text." In the case at bar, the Presentence Report writer has relied upon the execution of five different applications with life insurance companies. In turn, they have calculated and added all the potential benefits, no matter how speculative, in an effort to come up with a total number that is the claimed "intended" loss.

Of the five applications, only one, the Independent Order of Foresters, was issued. That particular policy had a $200,000.00 face value with an attached $50,000.00 term rider, for a total of $250,000.00. An additional provision for accidental death would have allowed an additional $200,000.00 if the insured suffered an accidental death as defined under the policy. For the purposes of the guideline calculation, the Defendant asserts that the only provision that should have been applied was the $250,000.00 face value on the policy. It should be noted that there was no payout on the policy, so no actual loss was sustained by Foresters.

As to the remaining policies, they were considered by the Presentence Report writer and the Government as part of the "intended" loss. However, the Second Circuit case, *United States vs. Confredo*, 528 F.3d 143 (2d Cir. 2008) is informative on this question. In the case before the Court, there is no evidence that the Defendant ever intended for there to be more than one policy of insurance. In fact, provided text

messages, which were occurring contemporaneously with applications, always suggested that the Defendant never considered multiple policies or stacking insurance policies. The Court noted that prior to the amended of application note seven to the former 2F1.1, the intended loss and loan procurement frauds "was the total value of the loan obtained or sought, without regard to whether the Defendant intended to repay the lender". (528 F.3d 150). That rigid interpretation of loss began to change with the Third Circuit's groundbreaking decision in *United States v. Kopp*, 951 F.2d 521 (3d Cir. 1991).

In the *Kopp* opinion, the court relied upon an opinion authored by Judge Posner, *See Id.* at 529, 532-33, which had observed that it was "simple" but "irrational" to treat all frauds as equivalent to thefts, referring in approach that took account of whether the defendant actually intended to pocket the face value of the amount he had fraudulently procured. In addition, based on a careful analysis of the then applicable version of 2F1.1, the court, in the *Kopp* opinion, rejected an approach that equated the guidelines-approved measures of "probable" or "intended" loss with the "worst case scenario of potential loss (here, the face value of the loan)." *Kopp*, 951 F.2d at 529.

In *Confredo*, the court made explicit what in the Second Circuit had only been implied before. In fraud cases, "intended loss" refers to a defendant's "subjective intent" (*Id.*). The principal established in *Confredo* has the greatest impact in cases in which a defendant intends little or no loss, but where the potential for loss is greater than the loss actually resulted. For example, in fraud cases involving mass mailing or spam email, the prosecution is likely to argue that the intended loss is the amount of money that could have been lost if every recipient of the letter or email sent the money requested. Although, "intended loss" includes intended losses that are "unlikely" to result, Section

4

2B1.1 Appl. Note 3(A)(ii), unlikely losses that were not actually intended are not relevant conduct. In other words, after *Confredo*, a mass mail/spam email defendant should be able to argue that the intended loss is no greater than the actual loss where the defendant can also show that at the time the offense was committed, the defendant was aware that no more than a particular percentage of mail/email recipients could be expected to respond to the solicitation. Since a defendant is presumed to intend the natural and probable consequence of his or her actions, such a defendant should be able to argue that intended loss is no greater than the loss that would result if that particular percentage of mail/emails fell for the scheme and sent money.

In the matter before this Court, the Defendant never intended there to be more than one policy of insurance. The "subjective intent" would be limited to the single policy. As a consequence, the only matter for the purposes of the calculation of "intended loss" is the Forester's Policy.

Wherefore, the Defendant asks the court to enter an order consistent with these arguments, and for such other and further orders as are reasonable in the circumstances.

Respectfully submitted,

BRUNTRAGER & BILLINGS, P.C.

 /s/ Neil J. Bruntrager
Neil J. Bruntrager #29688
225 S. Meramec Ave., Suite 1200
St. Louis, Missouri  63105
(314) 646-0066
(314) 646-0065 Fax
njbatty@aol.com

Attorney for Defendant

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 4th day of November, 2022, the foregoing **Sentencing Memorandum** was filed electronically with the Clerk of Court to be served by operation of the Court's electronic filing system upon all attorneys of record.

/s/ Neil J. Bruntrager